**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEREDITH GILL, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 17-4678 |
| v. | : | |
| | : | |
| ABINGTON MEMORIAL | : | |
| HOSPITAL, | | |
| Defendant. | : | |

**January  22, 2019**                                           **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Meredith Gill ("Gill") brings suit against Defendant Abington Memorial

Hospital ("Hospital").  Gill alleges that the Hospital violated the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq.*, when it refused to allow Gill to visit her mother in the

common area of the Hospital's Behavioral Health Unit ("BHU") with her service dog.  I exercise

federal question jurisdiction over Gill's claim pursuant to 28 U.S.C. § 1331.  The Hospital moves

for summary judgment.  For the reasons stated below, I will grant the Hospital's motion for

summary judgment.

**I. BACKGROUND**[1]

Plaintiff Meredith Gill is a quadriplegic who uses a motorized powered wheelchair to

move around.  Compl. ¶ 15.  Gill has a service dog who assists her with daily tasks and provides

emotional support.  Compl. ¶¶ 16, 17.

---

[1] Plaintiff failed to respond to Defendant's discovery requests and Plaintiff did not serve any discovery on
Defendant.  Lee Tankle Decl. ¶¶ 4-9, ECF No. 11 Ex. A.  "For purposes of Defendant's Motion for
Summary Judgment . . . Defendant treats as true well-pleaded facts in Plaintiff's Complaint."  Def.'s Mot.
Summ. J. 3 n.1.  Accordingly, many of the facts are taken from the Complaint.

On May 7, 2017, Gill's mother was admitted to the BHU after sustaining a mental breakdown.  Compl. ¶¶ 10,11; Traci D'Arco Decl. ¶ 5, ECF No. 11 Ex. B.  The BHU "is an adult psychiatric inpatient unit, which provides comprehensive assessment, short-term intensive psychiatric treatment, medical management, and discharge planning services to adults and their family members."  Nancy DeAngelis Decl. ¶ 3, ECF No. 11 Ex. C.  Because of the patient population, "the BHU is a 'secure' (i.e. locked) facility with more restricted access than other areas of the Hospital."  DeAngelis Decl. ¶ 5.

On May 11, 2017, Gill participated in a conference call with her mother who was in the BHU.  Meredith Gill Aff. ¶ 5, ECF No. 14 Ex. B; D'Arco Decl. ¶ 6.  Traci D'Arco, a social worker at the Hospital, also participated in the conference call.  *Id.*  From the conference, it was determined that Gill's mother was ready for her family to visit.  Compl. ¶ 14; D'Arco Decl. ¶ 7.  After the call, Gill's mother informed D'Arco that Gill used a wheelchair and had a service dog.  Compl. ¶ 18; D'Arco Decl. ¶ 8.  D'Arco told Gill's mother that Gill would be able to visit her in the BHU with the service dog.  Compl. ¶ 22; D'Arco Decl. ¶ 9.

Thereafter, Nancy DeAngelis, the Hospital's Director of Behavioral Health Services, was notified that Gill planned to visit the BHU with her service animal on May 12, 2017.  DeAngelis Decl. ¶¶ 8, 9.  DeAngelis was concerned about how particular BHU patients might adversely react to the service dog.  DeAngelis Decl. ¶ 10.  The Hospital does not have a blanket policy on whether a service dog may be permitted in the common areas of the BHU.  DeAngelis Decl. ¶ 30.  Thus, "the decision as to whether a dog is permitted in the common areas of the BHU on a particular day must always take into account the patient population and their psychiatric conditions and needs."  DeAngelis Decl. ¶ 31.

On May 12, 2017, there were twenty patients in the BHU, five more than the typical fifteen patients that are treated daily.  DeAngelis Decl. ¶ 15.  There were also more patients than usual with severe mental health issues in the BHU.  Rather than the typical one to three patients with severe issues, there were at least five such patients in the BHU on May 12, 2017. DeAngelis Decl. ¶ 16.  Some of the patients DeAngelis was particularly concerned would adversely react to a dog included a patient with hallucinations and panic attacks, a patient with Schizoaffective Disorder, a patient with major depression and psychotic symptoms who was highly aggressive, and a patient with a self-disclosed obsession with dogs.  DeAngelis Decl. ¶¶ 10-14.

After considering the BHU patient population on May 12, 2017, DeAngelis consulted with Dr. Diane Custer, the Chair of the Psychiatry Department.  DeAngelis Decl. ¶ 17. DeAngelis and Custer "concluded that allowing [Gill's] service animal in the common areas of the BHU with unpredictable and potentially aggressive patients could have resulted in a violent reaction to the animal and posed a direct threat to the safety of [Gill], her service animal, other patients, staff, and visitors."  DeAngelis Decl. ¶ 18.  Based on these concerns, the Hospital did not permit Gill to visit her mother in a common area of the BHU with her service dog on May 12, 2017.  Gill Aff. ¶ 16; DeAngelis Decl. ¶ 19.

"If [Gill] had visited the BHU on a different day, it is very possible that her service dog would have been permitted in the common areas of the BHU."  DeAngelis Decl. ¶ 32.  Because of the patient population on May 12, 2017, however, the Hospital required Gill and her service dog to visit her mother in the BHU's Consultation Room rather than in a common area of the BHU.  Gill Aff. ¶ 16; DeAngelis Decl. ¶ 19.  The Consultation Room is a "small lounge/visiting

room," Gill Aff. ¶ 16, that is "175 square feet and comfortably seats 12 people," DeAngelis Decl. ¶ 20.

Gill lives near the Hospital and has returned to the Hospital for other purposes several times since May 2017. Gill Aff. ¶ 27. "Given the proximity of [Gill's] home to Abington Hospital, [Gill] reasonably expects that she and [her service dog] will be expected, in the future, to use the services and facilities of Abington Hospital." Compl. ¶ 43. Gill "intends to return" to the Hospital. Compl. ¶ 46. If Gill needs to use the Hospital in the future, she is "concerned" about whether her service dog will be able to accompany her. Gill Aff. ¶ 28.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

materials in the record that parties may rely on include "depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P.

56(c)(1)(A).  In opposing a motion for summary judgment, the nonmoving party may not "rely

merely upon bare assertions, conclusory allegations or suspicions."  *Fireman's Ins. Co. of

Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Gill brings her claim under Title III of the ADA.  Title III of the ADA states:

No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation.[2]

42 U.S.C. § 12182(a).  The only relief available under Title III is prospective injunctive relief.[3]

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 532 (3d Cir. 2007), *amended on

reh'g* (Mar. 8, 2007).  The Hospital contends that Gill lacks standing to assert a claim for

---

[2] A hospital is a place of public accommodation. 28 U.S.C. § 12181(7)(F).

[3] In the Complaint, Gill seeks damages and injunctive relief for the alleged violation of Title III.  Gill now
concedes, however, that "injunctive relief is the only type of remedy available."  Pl.'s Resp. 7.

injunctive relief under Title III of the ADA.[4]  Gill counters that she has standing to bring her
Title III claim.

The burden of establishing standing rests on the party asserting federal jurisdiction.
*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To establish standing, a plaintiff must have
"(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the
defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.
Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  At the summary judgment
stage, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit
or other evidence 'specific facts,' Fed. R. Civ. P. 56(e), which for purposes of the summary
judgment motion will be taken to be true."  *Lujan*, 504 U.S. at 561.

This case concerns whether Gill has suffered an injury in fact, "the '[f]irst and foremost'
of standing's three elements."  *Spokeo*, 136 S. Ct. at 1547 (alteration in original) (quoting *Steel
Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).  "To establish injury in fact, a plaintiff
must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete
and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548
(quoting *Lujan*, 504 U.S. at 560).

When a plaintiff seeks injunctive relief, "past wrongs do not in themselves amount to that
real and immediate threat of injury necessary to make out a case or controversy."  *City of Los
Angeles v. Lyons*, 461 U.S. 95, 103 (1983).  Whether a plaintiff has "standing to seek the
injunction requested depend[s] on whether he [i]s likely to suffer future injury."  *Id.* at 105.  "The
equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot

---

[4] Alternatively, the Hospital argues that summary judgment is appropriate as a matter of law.  I will grant
summary judgment because Gill lacks standing to bring her claim.  Therefore, I do not address the merits
of her claim.

be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

A plaintiff's intention to return, at an indefinite time in the future, to a public accommodation that engaged in past discriminatory conduct is insufficient to establish standing for injunctive relief. *Lujan*, 504 U.S. at 564. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.*

Gill contends that she has standing because she lives near the Hospital and intends to return to the Hospital. Additionally, she has returned to the Hospital for other purposes on several occasions since May 2017. Moreover, Gill is "concerned" about whether her service dog will be able to accompany her if she needs to visit the Hospital in the future. Gill Aff. ¶ 28.

Although Gill expresses an intent to return to the Hospital, she expresses no intent to return to the BHU. Gill only alleges in her Complaint that she was denied access to the BHU with her service dog, not that she was denied access to any other portion of the Hospital. *See* Compl. ¶ 34. Because she expresses no intent to return to the BHU, Gill has not made the required "showing of any real or immediate threat that [she] will be wronged again," *Lyons*, 461 U.S. at 111, by the Hospital's refusal to permit her to visit in the common areas of the BHU with her service dog.

Even if Gill's intent to return to the Hospital could be construed as an intent to return to the BHU, Gill cannot establish standing because she only expresses an intent to return to the Hospital at an indefinite time in the future.[5] Gill's "'some day' intentions—without any

---

[5] Additionally, Gill cannot establish standing because she has not demonstrated that, if she were to return to the BHU, the Hospital would not allow her to visit in the common areas with her service dog. This is

description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. That Gill has returned to the Hospital on several occasions since May 2017 is irrelevant because Gill has not alleged that her service dog was unable to accompany her on these visits. Even if she had made this allegation, it would be insufficient because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (alteration in original) (quoting *O'Shea*, 414 U.S. at 495-96). While Gill may be concerned that she might be prevented from visiting the Hospital with her service dog, "[i]t is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Id.* at 107 n.8. Because Gill has not demonstrated a real and immediate threat of injury, she lacks standing to bring her case.

## IV. CONCLUSION

For the reasons set forth above, I will grant the Hospital's motion for summary judgment.


s/Anita B. Brody

_____
ANITA B. BRODY, J.

COPIES VIA ECF ON  1/23/2019

---

because the Hospital determines whether a service dog may be present in the common areas of the BHU based on the particular patient population on the day of the visit. *See Lyons*, 461 U.S. at 105-06 (holding that a plaintiff  did not establish that he was likely to suffer future injury from police officers' use of chokeholds where he alleged that "the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force," but did not allege "either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter . . . or, (2) that the City ordered or authorized police officers to act in such a manner").